## UNITED STATES BANKRUPTCY COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
### Richmond Division

| | |
|---|---|
| IN RE: ) | |
| ) | **Chapter 7** |
| RAYMOND WARE and ) | |
| JENNIFER WARE ) | **Case No. 12-30566-DOT** |
| ) | |
| Debtors. ) | |
| ) | |
| Roy M. Terry, Jr., trustee, ) | |
|     Plaintiff, ) | |
| ) | |
| v. ) | **Adv. No. 12-03091-DOT** |
| ) | |
| Fidelity National Title Insurance ) | |
| Company, EVB, C. Tony Hudson, ) | |
| trustee, William E. Martin, Jr., ) | |
| trustee, First Capital Bank, ) | |
| Raymond W. Ware, Jennifer Ware, ) | |
| and Alexis Homes, LLC, ) | |
|     Defendants. ) | |
| ) | |
| EVB, a Virginia corporation, ) | |
| C. Tony Hudson, trustee, and ) | |
| William Martin, Jr., trustee, ) | |
|     Plaintiffs ) | |
| ) | |
| v. ) | **Adv. No. 12-03098-DOT** |
| ) | |
| Raymond W. Ware, Alexis ) | |
| Homes, LLC, a Virginia limited ) | |
| liability company, and First Capital ) | |
| Bank, ) | |
|     Defendants ) | |

1

## MEMORANDUM OPINION

Before the court is the motion for summary judgment filed by the

chapter 7 trustee in this consolidated adversary proceeding. At a hearing held

February 13, 2013, the court announced that it would grant the motion. The

following constitute the court's findings of fact and conclusions of law.

### Facts

In 2006, debtor Raymond Ware, acting in his individual capacity,

purchased real property located at 337 Kellum Drive, Louisa, Virginia. At that

time, debtor worked as a homebuilder and was affiliated with two companies,

Ware Construction, Inc. and Alexis Homes, LLC. Debtor was the sole member

and manager of Alexis Homes. To finance his purchase of the 337 Kellum Drive

property, debtor obtained a loan from Hanover Bank. The loan was secured by

a deed of trust on the property.

Debtor intended to develop the property through Alexis Homes. To

finance the development construction and pay off Hanover Bank's deed of

trust, Alexis Homes borrowed $269,500 from EVB, as evidenced by a note in

the same amount executed on September 27, 2006, by Alexis Homes in favor of

EVB. That same day, as security for the EVB loan, Alexis Homes executed a

construction deed of trust on the property to two trustees for the benefit of

EVB. However, at the time Alexis Homes executed the construction deed of

trust, debtor still held the title to the property in his individual capacity, and

Alexis Homes was not the record owner of the property. Thus, the construction deed of trust was defective when it was recorded in Louisa County, Virginia, on September 28, 2006, and did not grant any interest in the property to EVB.

On March 21, 2011, First Capital Bank obtained a judgment for $73,372.78 against debtor in the Circuit Court of Spotsylvania County, Virginia. First Capital Bank recorded its judgment in Louisa County, Virginia, on May 4, 2011, thereby perfecting its security interest in the property.

After Alexis Homes' subsequent payment default on the EVB loan, EVB sought to foreclose on the property in 2011, but was unable to do so because of the defective construction deed of trust. EVB then brought suit in the Circuit Court of Henrico County, Virginia, against Fidelity National Title Insurance Company, the issuer of EVB's title policy on the property. That suit remains pending in the Henrico County Circuit Court.

Fidelity, purporting to be the subrogee of EVB, brought suit on November 28, 2011, in Circuit Court of Louisa County, Virginia, against debtor and First Capital Bank seeking reformation of the deed of trust, declaration of an equitable lien, and equitable subrogation. That same day, Fidelity filed a related *lis pendens* in the Louisa County Circuit Court.

On January 31, 2012, debtor and his wife filed a petition for relief under chapter 7 of the Bankruptcy Code. On April 30, 2012, the chapter 7 trustee filed an adversary proceeding against Fidelity, EVB, First Capital Bank, the debtors, and the trustees named in EVB's construction deed of trust. The

3

chapter 7 trustee's adversary proceeding was originally filed as Adv. Pro. No.

12-03091-DOT and seeks a determination of the nature and extent of liens,

claims and interests in the property. The statutory underpinnings of that

action are a bankruptcy trustee's avoidance powers pursuant to § 547 of the

Bankruptcy Code,[1] avoidance of preferences, and § 544 of the Bankruptcy

Code, which gives the chapter 7 trustee the status of a lien creditor.

Fidelity's state court reformation action against debtor and First Capital

Bank was stayed as a result of debtor's bankruptcy petition. Fidelity removed

that reformation suit to this court on May 9, 2012, at which time the suit was

designated as Adv. Pro. No. 12-03098-DOT. This court's order on June 7, 2012,

replaced Fidelity with EVB as the party in interest.

On July 17, 2012, the court consolidated the two adversary proceedings

for trial, with the consolidated action to be known as Adv. Pro. No. 12-03091-

DOT. On October 31, 2012, the chapter 7 trustee filed a motion for summary

judgment on his complaint for a determination of the validity, priority and

extent of liens. At a hearing on January 2, 2013, the court took the motion for

summary judgment under advisement and requested the parties to submit

proposed findings of fact and conclusions of law. After consideration of those

submissions, the court announced at a hearing held February 13, 2013,[2] that

the chapter 7 trustee's motion would be granted.

---

[1] All references to the Bankruptcy Code are to 11 U.S.C. §§ 101 *et seq.*
[2] That hearing was not held on the motion for summary judgment but instead on the motion to
strike, motion for sanctions, and separate motion for summary judgment filed by EVB on the
reformation complaint originally filed as Adv. Pro. No. 12-03098-DOT. The motions for

## The Chapter 7 Trustee's Complaint and Motion for Summary Judgment

The complaint is in five counts. In the first count, the chapter 7 trustee requests a ruling avoiding any transfer of an interest in the property that might arise from EVB's prosecution of its reformation suit, arguing that such a transfer would be an avoidable preference pursuant to § 547 of the Bankruptcy Code. Similarly, in the second count the chapter 7 trustee requests a ruling that the *lis pendens* filed in association with the reformation suit be avoided as a preference pursuant to § 547, as it was filed within the 90-day period prior to the bankruptcy filing. In the third count, the chapter 7 trustee requests a ruling avoiding any interest in the property that was not properly perfected as of the date debtors' chapter 7 petition was filed, pursuant to the provisions of § 544 of the Bankruptcy Code. The fourth count requests the court to find that to the extent a transfer is avoided under the first three counts, the chapter 7 trustee may recover the property pursuant to the provisions of § 550 of the Bankruptcy Code. Finally, the chapter 7 trustee requests that the court determine the validity, priority and extent of the liens, claims and interests in the property, pursuant to the provisions of Rule 7001(2) of the Federal Rules of Bankruptcy Procedure. Fed. R. Bankr. P. 7001(2).

In the motion for summary judgment, the chapter 7 trustee argues that all of the requirements for an avoidable transfer under § 544 and § 547 are

---

sanctions and to strike are the subject of a separate order entered simultaneously this day, and the motion for summary judgment was held to be moot in light of the court's announcement that the trustee's motion for summary judgment would be granted.

satisfied and that the chapter 7 trustee is entitled to judgment as a matter of law.

The chapter 7 trustee has also filed a motion to employ an auctioneer and for authority to sell the property. The court deferred ruling on those motions until the motion for summary judgment in this adversary proceeding was decided. There are also pending a motion to strike and a motion for sanctions, which are the subject of a separate order entered simultaneously this date.

## Relevant provisions of law

The chapter 7 trustee relies on the "strongarm" powers of § 544(a) of the Bankruptcy Code, which gives the chapter 7 trustee the avoidance rights of a lien creditor:

(a) The trustee shall have, as of the commencement of the case, and without regard to any knowledge of the trustee or of any creditor, the rights and powers of, or may avoid any transfer of property of the debtor or any obligation incurred by the debtor that is voidable by--

(1) a creditor that extends credit to the debtor at the time of the commencement of the case, and that obtains, at such time and with respect to such credit, a judicial lien on all property on which a creditor on a simple contract could have obtained such a judicial lien, whether or not such a creditor exists;

(2) a creditor that extends credit to the debtor at the time of the commencement of the case, and obtains, at such time and with respect to such credit, an execution against the debtor that is returned unsatisfied at such time, whether or not such a creditor exists; or

(3) a bona fide purchaser of real property, other than fixtures, from the debtor, against whom applicable law permits such transfer to be perfected, that obtains the status of a bona fide

6

purchaser and has perfected such transfer at the time of the commencement of the case, whether or not such a purchaser exists.

The rights of lien creditors in Virginia are found in Va. Code Ann. § 55-96

(2007):

A. 1. Every (i) such contract in writing, (ii) deed conveying any such estate or term, (iii) deed of gift, or deed of trust, or mortgage conveying real estate or goods and chattels and (iv) such bill of sale, or contract for the sale of goods and chattels, when the possession is allowed to remain with the grantor, shall be void as to all purchasers for valuable consideration without notice not parties thereto and lien creditors, until and except from the time it is duly admitted to record in the county or city wherein the property embraced in such contract, deed or bill of sale may be.

The chapter 7 trustee also relies on a trustee's powers to avoid preferential transfers.

Preferential transfers are defined in § 547 of the Bankruptcy Code:

(b) Except as provided in subsections (c) and (i) of this section, the trustee may avoid any transfer of an interest of the debtor in property--

(1) to or for the benefit of a creditor;
(2) for or on account of an antecedent debt owed by the debtor before such transfer was made;
(3) made while the debtor was insolvent;
(4) made--
    (A) on or within 90 days before the date of the filing of the petition; or
    (B) between ninety days and one year before the date of the filing of the petition, if such creditor at the time of such transfer was an insider; and
(5) that enables such creditor to receive more than such creditor would receive if--
    (A) the case were a case under chapter 7 of this title;
    (B) the transfer had not been made; and
    (C) such creditor received payment of such debt to the extent provided by the provisions of this title.

## Summary Judgment standard

A court may grant summary judgment only when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

## Analysis and Conclusions

The court notes at the outset that the parties do not disagree as to the facts. Their central disagreement is over the effect of the *lis pendens* on the chapter 7 trustee's § 544 and § 547 claims.

The chapter 7 trustee argues that the court need not consider the EVB reformation suit because any transfer arising therefrom would be an avoidable transfer. The court agrees and finds that the outcome of this case is governed by the case of *Wells Fargo Funding v. Gold*, 432 B.R. 216 (E.D. Va. 2009). In that case, creditors who lent funds to the debtor discovered that they had been victims of a mortgage fraud scheme. The debtor had failed to record deeds of trust on the property purportedly securing the creditors' claims. Thus, at the time that the debtor filed his bankruptcy petition, those defrauded creditors held unsecured claims.

The bankruptcy court denied the claims made by the unsecured creditors that they held equitable liens that could not be avoided by the § 544 strongarm powers of the chapter 11 trustee. The creditors had based their arguments on the fact that prior to the filing of the bankruptcy case and inside of the 90-day preference period, a *lis pendens* had been recorded. The creditors asserted that the existence of the *lis pendens* deprived the trustee of

8

the status of a bona fide purchaser for value without notice. They also argued
that because the debtor defrauded them, they should be considered to be the
beneficiaries of a constructive trust on the property upon which they had
thought they held liens.

Judge Mitchell found that in the absence of the *lis pendens*, the trustee
would prevail, regardless of whether a constructive trust were imposed.[3] *Id*. at
220-21. However, he found that the *lis pendens* provided the trustee with
constructive notice sufficient to defeat the trustee's strongarm powers. *Id*. at
221-22. He then considered the fact that the *lis pendens* had been filed within
the preference period and addressed whether it could thus be avoided pursuant
to the provisions of § 547. He found that while the *lis pendens* itself did not
operate as a transfer or create a lien, a successful outcome in the underlying
lawsuit from which the *lis pendens* sprang would relate back to the date of the
filing of the *lis pendens* and would thus create a transfer on that date, which
was within the preference period. Thus, he ruled that the trustee's interest in
the property was superior to that of the unfortunate defrauded creditors. *Id*. at
222-23.

On appeal, the district court affirmed Judge Mitchell's ruling that the
trustee's strongarm powers would trump any equitable claims of the defrauded
creditors. The court noted that "a conclusion to the contrary would contravene
the Bankruptcy Code's underlying goal of aiding 'the court in the

---

[3] Judge Mitchell's analysis was delivered from the bench and no written memorandum thereof
exists. However, the district court opinion summarizes the analysis entered into by Judge
Mitchell.

administration of a bankruptcy estate so as to bring about a ratable

distribution of assets among the bankrupt's creditors.'" 432 B.R. at 221

(quoting *Nat'l Energy & Gas Transmission, Inc. v. Liberty Elec. Power, LLC,*

*492 F.3d 297, 301 (4th Cir.2007)).*

     The district court also concurred with the bankruptcy court's conclusion

that the filing of the *lis pendens* prior to the filing of the bankruptcy case

deprived the trustee of the status of a bona fide purchaser. The *lis pendens*

gave constructive notice to the trustee, which the court said was contrary to

the status of bona fide purchaser. 432 B.R. at 221-22.

     Finally, the court addressed the issue of whether the *lis pendens* could

be avoided pursuant to § 547, the preference section of the Bankruptcy Code.

After reviewing the provisions of that statute, the court noted that Judge

Mitchell had found specifically that there was no transfer or creation of a lien

by the filing of the *lis pendens*. The district court then posed this question: "if

the *lis pendens* was not a 'transfer,' what was 'avoided' by the trustee under

§ 547?" 432 B.R. at 223. The court noted that there is a disagreement among

courts as to whether a *lis pendens* may be deemed an avoidable transfer. In a

search for guidance, the court considered the definition of "transfer" set forth in

the Bankruptcy Code:

> (A) the creation of a lien;
> (B) the retention of title as a security interest;
> (C) the foreclosure of a debtor's equity of redemption; or
> (D) each mode, direct or indirect, absolute or conditional, voluntary or
>     involuntary, of disposing of or parting with—
>     (i) property; or

(ii) an interest in property.

11 U.S.C. § 101(54), but noted that *lis pendens* is not listed therein. However, it observed that those courts deeming the filing of a *lis pendens* to be a transfer capable of being avoided pursuant to § 547 generally focus "upon the effect of a *lis pendens* on a prospective purchaser." 432 B.R. at 223. The court subsequently did just that when affirming Judge Mitchell's finding that the *lis pendens* was capable of being avoided under § 547.

The court then turned to whether the filing of the *lis pendens* may be considered a transfer under Virginia law and again affirmed Judge Mitchell's finding that the filing of the *lis pendens* only serves the function of giving notice of the pendency of a lawsuit. *Id.* at 224. The court then spoke approvingly of Judge Mitchell's holding that while a *lis pendens* may not be a transfer, "any transfer that *would* arise from the *lis pendens* necessarily related back to the date of the filing of the *lis pendens*." *Id.* Thus, the relief would be within the preference period and would thus be avoidable. The court also praised Judge Mitchell's reliance on the Florida case of *In re Whitehead,* 399 B.R. 570 (Bankr. S.D. Fla. 2009). That case, which set forth the "relation back" proposition, also arose in a state in which a *lis pendens* serves only as notice and not to create a lien.

In approving the trustee's ability to avoid the *lis pendens* under the provisions of § 547, the district court found that the filer of the *lis pendens* put "the world on notice of his equitable claim to the properties," and thereby

11

"acquired an interest superior to that of a hypothetical future bona fide purchaser, which suffices under § 547." 432 B.R. at 224, quoting *In re Whitehead*, 399 B.R. at 573. In other words, the district court held, "filing a *lis pendens* certainly does not create a lien, but it is a 'consequential action' which § 547 permits the trustee to avoid, provided it occurs within the requisite 90-day period. As such, although Judge Mitchell did hold that a *lis pendens* is not a 'transfer,' his ultimate reliance on §547 aligns itself well with the underlying purposes of the Bankruptcy Code and the Virginia recording statute." *Id.*

The court has considered all of the arguments put forth by counsel on both sides and is of the opinion that the *Wells Fargo Funding, Inc. v. Gold* case is on all fours with this case except in one aspect. In *Wells Fargo*, the underlying request for relief was not for the reformation of a mortgage, which EVB argues is a critical difference. EVB argues that any relief that would be granted in the underlying reformation action would be retroactive to September 27, 2006, the date of the original creation of the mortgage in favor of EVB. That date being outside of the preference period, EVB argues that the chapter 7 trustee may not prevail under § 547.

The court disagrees with the analysis put forth by EVB. First, the court notes that reformation is an equitable remedy, *see Ocwen Fin. Serv. Inc. v. Gilmore (In re Gilmore)*, 284 B.R. 801 (Bankr. E.D. Va. 2002). In any equitable ruling, the rights of the intervening lien creditor without notice must be protected. In that regard, the court will follow the analysis found in *Plaza*

12

*Village Townhouses Unit Owners' Association v. Younger*, 29 Va. Cir. 199, 1992 W.L. 884963, at *3 (Va. Cir. Ct. 1992). In that case, the Virginia court held that a deed was void as to a lien creditor "until is it admitted to record whether or not the creditors know of the deed," *id.*, a ruling even more far-reaching than sought here. The court held that to create an equitable lien that would defeat the superiority of a creditor's lien because of matters outside the record was contrary to equity. It further opined that a lien creditor should be able to rely on matters of record.

The court adopts the reasoning of the court in *Plaza Village Townhouses* and finds that a relation back to the time of the original contract is not proper in this case. To allow the parties now to establish a right superior to other creditors would violate both the equitable nature of a deed reformation and also the Bankruptcy Code's distribution system. *See In re U.S. Lan Systems Corp.*, 235 B.R. 847, 856 (Bankr. E.D. Va. 1998). A ruling placing EVB ahead of all other creditors would be in direct contravention of the purpose of the provisions of § 547 and the other provisions of the Bankruptcy Code's distribution system.

In this case, equity requires that for purposes of § 547, when a *lis pendens* is filed within the preference period and there are intervening creditors without notice, the reformation action does not relate back to the original date of the flawed transaction sought to be corrected. With respect to the bankruptcy distribution system, the ability to avoid preferential transfers

13

was included in the Bankruptcy Code to ensure the distribution of a debtor's assets in a fixed order. The court cannot use its equity powers to allow a creditor to take action within the preference period to frustrate that prescribed order.

In addition, the court notes that while EVB has stridently argued that under Virginia law a reformation action relates back to the date of the original transaction, it cites only one Virginia cases in support thereof. That case, *Boone v. Scott*, 166 Va. 644 (1936), says merely that if equity requires reformation, "equity should, and will reform the instrument to make it conform to the real intent of the parties at the time it was executed." *Id*. at 653. The phrase "at the time it was executed" modifies the noun "intent" in that opinion, and the case does not stand for the proposition put forth by EVB.

EVB also points to *Ocwen Fin. Serv. Inc. v. Gilmore (In re Gilmore)*, 284 B.R. 801 (Bankr. E.D. Va. 2002), as support for its position. The court finds that case to be distinguishable and not strong authority for the argument EVB proffers. In that case, the court did allow a reformation retroactive to the original settlement date. While in that case there were intervening creditors, those creditors were named in the reformation suit, were given notice of the suit, and did not appear at trial; judgment was entered against them by default without further discussion. Additionally, it appears from the facts in the case that the intervening creditors would likely have had knowledge of Ocwen's

14

prior interest in the property at issue when they extended credit and thus would not have been damaged by the default judgment.

The court is persuaded by the decision in *Wells Fargo Funding v. Gold.* The facts in that case were much more egregious than those before the court here, but still the district court did not grant relief to the petitioning creditors. In light of that case and the analysis above, the court finds that because of the *lis pendens* filed in EVB's Louisa County lawsuit, the chapter 7 trustee may not use the strongarm powers of § 544 of the Bankruptcy Code and Va. Code Ann. § 55-96 to avoid the reformation suit filed by EVB, nor may he use those powers to avoid the creation of a constructive trust. However, the chapter 7 trustee may use the powers of §547 and § 550 to avoid the *lis pendens* and any transfer arising from the reformation lawsuit for which the *lis pendens* was filed. Therefore, as any ruling on the reformation lawsuit would cause an avoidable preference, the court finds the interest of EVB in the property to be unsecured, and the reformation complaint will be dismissed.

The chapter 7 trustee has also filed a motion to hire an auctioneer and hold a public auction to sell the real property at issue. The court having determined that EVB has no secured interest in the property, and no other party having objected to those motions, the court will grant the motions.

A separate order will be entered 1) granting the motion for summary judgment filed by the chapter 7 trustee, 2) instructing the chapter 7 trustee to submit orders granting the motion to hire an auctioneer and the motion to

authorize a public auction, and 3) denying EVB's motion for summary

judgment and dismissing EVB's reformation complaint, as any relief granted

thereunder would be an avoidable preference.

Signed: March 20, 2013

_____/s/ Douglas O. Tice Jr._____
United States Bankruptcy Judge

Entered on Docket:   March 20, 2013

**Copies:**

Joseph R. Pope
Brendan David O'Toole
Williams Mullen
200 South 10th Street, 16th floor
P.O. Box 1320
Richmond, VA 23218-1320
*Counsel for EVB, Fidelity National Title Insurance Company, William Martin,*
*Jr., trustee and C. Tony Hudson, trustee*

Walter L. Ragland
P. O. Box 675
Thornburg, VA 22565
*Counsel for debtors*

Raymond Ware
Jennifer Ware
4428 Sheppards Road
Partlow, VA 22534
*Debtors*

Christopher L. Perkins
LeClair Ryan
Riverfront Plaza, East Tower
951 East Byrd Street
Post Office Box 2499
Richmond, VA 23218-2499
*Counsel for First Capital Bank*

John C. Smith
Sands Anderson PC
1111 East Main Street, 24th Floor
P.O. Box 1998
Richmond, VA 23218-1998
*Counsel for the chapter 7 trustee*

Roy M. Terry, Jr.
P.O. Box 2188
Richmond, VA 23218-2188
*Chapter 7 trustee*

Fidelity National Title Insurance Company
c/o Joseph R. Pope, Esq.
P.O. Box 1320
Richmond, VA 23218-1320

EVB
Attn: Joe A. Shearin, CEO
330 Hospital Road
Tappahannock, VA 22560

William E. Martin, Jr., Trustee
307 Church Lane
Tappahannock, VA 22560

C. Tony Hudson, Trustee
307 Church Lane
Tappahannock, VA 22560

Alexis Homes, LLC
c/o Raymond Ware
4424 Shepherds Road
Partlow, VA 22534